UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM NO. 24-107(PJS/JFD)

---

UNITED STATES OF AMERICA,

          Plaintiff,         **DYMOND RENE HAYDEN'S**
                                         **SUPPLEMENTAL BRIEFING**
v.                                        **ON PRETRIAL MOTIONS**

DYMOND RENE HAYDEN,

          Defendant.

---

Dymond Rene Hayden, through counsel, has moved the Court to dismiss Count 1 of the indictment and to suppress the fruits of an unlawful search. (ECF Doc. 21 and 22.) Mr. Hayden previously filed a memorandum in support of the suppression motion. (ECF Doc. 23.) A motions hearing was held on July 31, 2024, at which the Court heard testimony from Investigators Ryan Pankratz and Justin Wilmes and received nine government exhibits. In support of his motions, Mr. Hayden now offers the following:

## ARGUMENT

### I. THE FELON-IN-POSSESSION STATUTE IS UNCONSTITUTIONAL BOTH FACIALLY AND AS APPLIED TO MR. HAYDEN.

Count 1 charges Mr. Hayden with felon in possession of a firearm/ammunition in violation of 18 U.S.C. §§ 922(g)(1). Mr. Hayden brings a facial and as-applied challenge to the charged statute, as violative of the Second Amendment under the Supreme Court's decision in *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022), and now supplemented by the more recent decision in *United States v. Rahimi,* 144 S. Ct. 1889 (2024).

Mr. Hayden previously acknowledged that this argument was foreclosed by *United States v.*

1

*Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023), where the Eighth Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1). (ECF Doc. 35 at 1). Mr. Hayden recognizes that the Eighth Circuit has since reaffirmed its previous ruling. *United States v. Jackson*, --- F.4th ---, 2024 WL 3711155 (8th Cir. 2024), *pet. for rehearing filed* (Aug. 22, 2024). Nevertheless, this supplemental briefing is intended to preserve this issue in preparation for possible future developments in the law.

Since *Jackson* was originally vacated, at least two noteworthy changes in the law have occurred. First, the Supreme Court decided *Rahimi*, which affirmed the *Bruen* methodology for analyzing challenges to the Second Amendment. *See* 144 S. Ct. at 1898 ("As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court *must* ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance stuck by the founding generation to modern circumstances.'") (internal citations to *Bruen* omitted and emphasis added). Second, the Supreme Court vacated and remanded the Eighth Circuit's *Jackson* decision for further proceedings in light of its decision in *Rahimi*. *Jackson v. United States,* __ S. Ct. __, 2024 WL 3259675 (July 2, 2024). The Eighth Circuit quickly issued an opinion affirming its prior decision in light of *Rahimi*, and Mr. Jackson has filed a petition for en banc rehearing. *See Jackson*, --- F.4th ---, No. 22-2870 (8th Cir. Aug. 8, 2024), Slip Op. at 8–9, *pet. for rehearing filed* (Aug. 22, 2024).

### A. Section 922(g)(1) violates the Second Amendment on its face.

As discussed in the original motion to dismiss, since the possession of firearms and ammunition come within the Second Amendment's plain text, the charged conduct is

presumptively protected by the Second Amendment. (ECF 35, at 3–4). Accordingly, the government bears the burden to "justify its regulations."; and proper justification requires that the law in question be sufficiently analogous to the history and tradition of the Second Amendment. (ECF 35, at 5–7).

Here, the government cannot show that § 922(g)(1)'s restrictions are consistent with the Nation's historical tradition of firearm regulation as required by *Bruen*. Felon-disarmament laws did not appear in the United States until the Twentieth Century and were unknown to the generation that ratified the Second Amendment, thus § 922(g)(1) is not consistent with the Nation's historical tradition of firearms regulations. (ECF 35, at 5–7).

### B.  § 922(g)(1) is unconstitutional as applied to Mr. Hayden.

In addition, since Mr. Hayden's prior offenses fail to evince violence or dangerousness, § 992(g)(1) cannot be applied to him under the Second Amendment *Bruen* test as supplemented by *Rahimi*. *Rahimi* rejected a facial challenge to § 922(g)(8), holding that laws preventing individuals who threaten physical harm to others from misusing firearms is part of the Nation's tradition. 144 S.Ct. at 1901–02. In reaching this conclusion the *Rahimi* court drew from an extensive history of provisions barring dangerous individuals from possessing weapons. *Id.* at 1899 (citing 14 Car. 2 c. 3, § 13 (1662) ("The Militia Act of 1662, for example, authorized the King's agents to 'seize all Armes in the custody or possession of any person ... judge[d] dangerous to the Peace of the Kingdome.'")). In particular, the Court analyzed a series of historical "surety" and "going armed" laws which the court held reflected the "common sense" notion that those who pose a "clear threat of physical violence… may be disarmed." *Id.* at 1901. In reaching its holding, the Court recognized that § 922(g)(8) fits within the Nation's traditional regulatory history in part because the statute applies only once a court has judged that the defendant "represents a credible

3

threat to the physical safety of another." *Id.* at 1901–02 (citing 18 U.S.C. § 922(g)(8)(C)(i)). *Rahimi* recognized that the statute matched directly with the surety and going armed laws which also required a judicial determination that a particular defendant was dangerous.

Additionally, *Rahimi* stressed the limited duration of the § 922(g)(8) restriction on firearm possession. The Court held that the statute's temporary restrictions on firearm possession was analogous to the surety laws which only applied for a limited duration. *Id.* at 1902. In *United States v. Duarte*, the Ninth Circuit also stressed the permanence of the statute's ban in affirming a challenge to § 922(g)(1). *See* 101 F.4th 657, 691 (9th Cir. 2024), *panel opinion vacated and rehearing en banc granted,* 108 F.4th 786 (9th Cir. 2024). The *Duarte* panel opinion (now vacated) held that the Government presented no adequate mooring in the nation's tradition for the § 922(g)(1) permanent ban on felons possessing firearms. 101 F.th at 691.

Applying these concepts to the case at hand, § 922(g)(1) cannot be constitutionally applied to Mr. Hayden. First, Mr. Hayden is not a violent individual, nor has he been adjudicated as dangerous as required under *Rahimi*. While Mr. Hayden was convicted of a murder offense, this was not an intentionally violent crime but instead was based on a mens rea of recklessness. Further, § 922(g)(1) imposes a permanent ban on gun possession by Mr. Hayden, despite the lack of dangerousness evidenced by the prior conviction. Even if the conviction could justify a temporary disarmament, nothing supports a lifetime prohibition. Applying this statute to Mr. Hayden violates his rights under the Second Amendment, and so he respectfully asks the Court to dismiss Count 1.

II.   **THE FIREARM AT ISSUE HERE WAS THE FRUIT OF AN UNLAWFUL SEARCH AND MUST BE SUPPRESSED.**

Mr. Hayden has previously filed a memorandum providing the legal basis for his suppression motion, *see* ECF Doc. 23, and he relies on the arguments raised there. In brief, Mr. Hayden argues that, with an arrest warrant and a reasonable belief that Mr. Hayden was inside the apartment, the officers only had authority to enter to arrest Mr. Hayden, not to conduct a search. *See*, *e.g.*, *United States v. Junkman*, 160 F.3d 1191, 1193–94 (8th Cir. 1998). By opening the dresser drawer where the firearm was found, the officers went beyond what was in plain view and violated Mr. Hayden's Fourth Amendment rights. He therefore respectfully asks the Court to suppress the firearm.

The government argued in its responsive brief that there was a question regarding Mr. Hayden's rights in the apartment. (*See* ECF Doc. 29 at 3–4.) Inv. Pankratz testified that the apartment was rented by Mr. Hayden's girlfriend, and he was seen entering and leaving multiple times. (*See* Mtn Hrg T. 17; *see also id*. at 29 (Inv. Wilmes noting that the name of the lessee was in Mr. Hayden's documents from the Department of Corrections.) He was naked in the shower at the apartment when officers arrived, and he had clothes in the dresser. (*See id*. at 17–18.) He had been seen entering the apartment the night before the arrest and had not left. (*See id*. at 30–31.) Mr. Hayden thus had the Fourth Amendment rights due an overnight guest. *See Minnesota v. Olson*, 495 U.S. 91, 98–99 (1990). Nor could those rights in rental property be waived by the consent of the landlord, as suggested by the government. (*Compare* ECF Doc. 29 at 4 (making that argument), *with Chapman v. United States*, 365 U.S. 610, 616–17 (1961) (rejecting that argument because it would "reduce the Fourth Amendment to a nullity and leave tenants' homes secure only in the discretion of landlords") (cleaned up).)

5

For much the same reason, the standard condition of release requiring Mr. Hayden to submit to searches of "premises" discussed in Government Exhibit 1 cannot lawfully extend as far as Inv. Pankratz's testimony described. Inv. Pankratz testified that, in his interpretation, the "premises" condition permitted searches "wherever [Mr. Hayden] may be." (*See* Mtn Hrg T. 20.) But such an interpretation would mean that the Fourth Amendment disappears in every location where Mr. Hayden may be, however briefly, which would also impinge necessarily on the Fourth Amendment rights of those around him. *But see United States v. Brown*, 346 F.3d 808, 811 (8th Cir. 2003) ("[W]hen a probationer consents to a search condition, his already-reduced reasonable expectation of privacy diminishes significantly.").

At the time they entered the apartment, the officers at least had an arrest warrant issued by the Department of Corrections. Inv. Pankratz testified that they were also aware of an active arrest warrant from Ramsey County, *see id*. at 11, but Inv. Wilmes was not as sure. (*See id*. at 42–43.)

Whether the entry occurred on the authority of an arrest warrant based on probable cause found by a judge, rather than a DOC warrant authorized by DOC officials, is significant under *Payton v. New York*, 445 U.S. 573 (1980), and *Steagald v. United States*, 451 U.S. 204 (1981), cases that authorize entry into private residences to effectuate arrest warrants. *Payton* was grounded in the crucial idea that, much like a search warrant, a neutral magistrate had previously reviewed the facts and agreed with the officers about the existence of probable cause:

> It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority

6

> to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

445 U.S. 573 at 602–03. But where, as with a DOC warrant, it is only one officer approving the actions of another officer, the *Payton* principle does not apply. No neutral magistrate was interposed between the zealous officers and Mr. Hayden, and the warrant itself was not found to be based on probable cause. *But see United States v. Knights*, 534 U.S. 112, 121 (2001) (approving warrantless probation searches on reasonable suspicion). Based on *Payton* principles, the DOC warrant alone could not authorize the entry into the apartment. Where the officers lacked clarity regarding their knowledge of the Ramsey County warrant, the entry was not authorized under the Fourth Amendment. Mr. Hayden respectfully asks the Court to suppress the evidence derived from that illegal search.

## CONCLUSION

In sum, § 922(g)(1)'s application to Mr. Hayden is unconstitutional because the law is overinclusive, in the sense that many individuals with a felony-level conviction record are not dangerous and therefore may not be subject to permanent firearm-possession bans. Mr. Hayden has not been convicted of an intentional violent crime, nor has he been adjudicated as dangerous. Thus, under *Bruen* and *Rahimi,* charged § 922(g)(1) is unconstitutional as applied to him. Mr. Hayden respectfully moves this Court to dismiss Count 1 of the Indictment

Mr. Hayden also argues that the search leading to the discovery of the firearm violated his rights under the Fourth Amendment, and he asks the Court to suppress the evidence derived from the unlawful search.

Dated: August 28, 2024                                      Respectfully submitted,

*s / Thomas H. Shiah*
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, MN  55415
Attorney for Mr. Hayden